ANNE E. BROWN
MN Bar# 187008/*pro hac vice*
BROWN LAW LLC
310 4th Ave. S., Suite 5010
Minneapolis, MN 66415
Phone: (651)695-8789
Fax: (877) 695-8755
browna@militarymedicalmalpractice.com

JANICE F. MULLIGAN, CA BAR # 99080
BRIAN K. FINDLEY, CA BAR# 251172
MULLIGAN, BANHAM & FINDLEY
2442 Fourth Avenue, Suite 100
San Diego, CA 92101
Phone: (619) 238-8700
Fax: (619) 238-8701
mulligan@janmulligan.com
findley@janmulligan.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.T.B., A MINOR, BY AND THROUGH HIS PARENTS AND NEXT FRIENDS, RICHARD D. BREAULT AND MAYA M. BREAULT; RICHARD D. BREAULT, INDIVIDUALLY; AND MAYA M. BREAULT, INDIVIDUALLY,<br><br>        Petitioners,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | CASE NO.: 19-CV-2305-W(KSC)<br><br>**1. PLAINTIFFS'<br>EX PARTE PETITION FOR<br>APPROVAL OF MINOR'S<br>COMPROMISE AND FOR<br>APPROVAL OF MINOR'S<br>TRUSTS;**<br><br>**2. DECLARATION OF BRIAN K.<br>FINDLEY, ESQ. SUPPORTING<br>EXHIBITS; and**<br><br>**3. INDEX OF EXHIBITS** |

Pursuant to Local Civil Rule 17.1, Petitioners, MAYA BREAULT AND RICHARD DYLAN BREAULT, individually and as next friends of R.T.B., their minor child, hereby petition this Court to approve the settlement and compromise of R.T.B.'s claims in this action against the Defendant, UNITED STATES OF AMERICA. Additionally, pursuant to Local Civil Rule 17.1(b)(3), Petitioners hereby petition this Court to approve the proposed trusts for R.T.B.'s benefit.

## A. PETITION FOR APPROVAL OF MINOR'S COMPROMISE

**1.** **Petitioners and their relationship to the minor child**. Petitioners, Maya Breault and Richard Dylan Breault, are the biological parents, primary caretakers, and next friends of R.T.B., a minor.

**2.** **Minor Plaintiff.** R.T.B.

(a) Address: 304 Garfield Street, Somerset, Wisconsin 54025

(b) Age: 5.

(c) Sex: Male.

(d) Minor: Yes.

(e) Person with a disability: Yes.

**3.** **Nature of Claim**: This is a medical malpractice, birth injury action brought against the United States under the Federal Tort Claims Act. 28 U.S.C. §1346(b)(1). The case arises out of injuries during and shortly after the birth of Plaintiff R.T.B. at Naval Hospital Camp Pendleton ("NHCP"), California on April 16, 2016. California state law applies to determine liability and damages.

**4. Incident:** Petitioners' obstetrical expert concluded that when R.T.B. began showing signs of distress before his birth, the failure to undertake cesarean delivery a full hour before Maya Breault was actually taken to the operating room, and an hour and 24 minutes before R.T.B. was delivered, was a breach of the standard of care. As a result of the delay in doing the c-section, R.T.B. suffered a prolonged lack of oxygen to his brain and was born very depressed; he was not breathing and had a dangerously low heart rate. The standard of care for resuscitation of a depressed newborn is set by the Neonatal Resuscitation Program (NRP.) Petitioners' experts concluded that when comparing the NRP standards to what was done, or not done, in this case, established there were multiple breaches in the standard of care. This negligent resuscitation resulted in another 17 minutes of oxygen deprivation to R.T.B.'s brain. The medical records confirm R.T.B. suffered a profound brain injury caused by lack of oxygen to his brain shortly before, during and soon after his birth. Please see **Exhibit 1**, the Naval Medical Center San Diego NICU Discharge Summary for R.T.B.

**5. Injuries and Recovery:** R.T.B. has cerebral palsy, global developmental delays, will never live independently, will never work, and will require 24/7 attendant care, as well as specialized medical care for the rest of his life. The injuries are considered permanent. Please see the medical record summary, report and examination of R.T.B. by Petitioners' expert pediatric neurologist Steven Glass MD, attached as **Exhibit 2.**

**6.     Treatment**: R.T.B. has received many treatments to date, and treatment continues. He was transferred on the day of birth to the neonatal intensive care unit at Naval Medical Center San Diego, California, where he remained for 41 days. He received brain scans, x-rays, blood tests, and neurological evaluations to determine the extent and best treatment course for his injuries. Please see R.T.B.'s newborn discharge summary referenced above and attached as Exhibit 1.  Following his NICU stay, R.T.B. has received extensive physical therapy, occupational therapy, mobility therapy, feeding therapy, speech services and special education from multiple providers. R.T.B.'s current care providers are primarily those at Gillette Children's Specialty Healthcare Hospital in St. Paul, Minnesota, as well as therapists and teachers at Somerset Elementary School, Somerset, Wisconsin.  Recent records from those providers are attached as **Exhibit 3**.  R.T.B. has also received testing and an evaluation from Petitioners' expert pediatric neurologist that is reported in Exhibit 1, referenced above.

**7.     Defense claims**: The United States aggressively defended against each of Petitioners' claims.  The United States argued that the standard of care was met, disputed that the cause of the injuries was negligence, claimed that R.T.B. has a shortened life expectancy, and otherwise challenged the amount of damages claimed by Petitioners. The United States further argued that it was completely immune from liability for the negligent resuscitation under California Health and Safety Code Section 1317. The United States hired multiple experts who were

prepared to testify in support of these defenses.

8.     **Amount of settlement**:   On September 23, 2021, during a second settlement conference session with Magistrate Judge Karen Crawford, the parties entered into a conditional settlement with a present value in the amount of Three Million, Five Hundred Thousand Dollars ($3,500,000.00), subject to the approval of this Court, the Department of Justice Torts Branch, and the Assistant Attorney General of the United States,  as well as  other  conditions  specified  in  the Stipulation for Compromise Settlement and Release  of  Federal  Tort  Claims Act  Claims   Pursuant to 28 U.S.C. §2677, attached to this Petition as **Exhibit 4**. The expected payout of the settlement over R.T.B.'s lifetime is projected to be $5,721,600.00.  Please see **Exhibit 5**, Periodic Payment Illustration.

9.     **Proposed Allocation of Settlement**: A summary of the proposed allocation of the $3,500,000.00 global settlement is set forth herein, with a full explanation of each component provided in the subsequent paragraphs:

| Payee | Item | Amount |
|---|---|---|
| **R.T.B (minor child)** | **Reversionary Medical Trust** | **$2,100,000.00**<br>• Initial funding: $900,000.00 cash<br>• Future funding: $1,200,000.00 for the purchase of an annuity that will feed the Trust approximately $4,700 a month for R.T.B.'s life starting 10 years after the initial funding |

| | Upfront cash | $1,400,000.00 (to be allocated as set forth below) |
|---|---|---|
| **R.T.B., minor child** | **Supplemental Special Needs Trust** (Plaintiff funded) | $237,125.58 |
| **Wisconsin MEDICAID** | **Medicaid lien reimbursement** | $62,016.13 |
| **Maya Breault** (Mother of R.T.B.) | Non-economic damages for negligent infliction of emotional distress; and for extraordinary care for R.T.B. | $75,000.00 |
| **Richard Dylan Breault** (Father of R.T.B.) | Non-economic damages for negligent infliction of emotional distress; and for extraordinary care for R.T.B. | $25,000.00 |
| Brown Law LLC and Mulligan, Banham & Findley | **Attorneys' fees** (25% of $3,500,000.00) | $875,000.00 |
| Brown Law LLC and Mulligan, Banham & Findley | **Litigation costs advanced** | $125,858.29 |

10. **Reversionary Medical Trust:** An Irrevocable Reversionary Medical Trust ("Reversionary Trust") for the benefit of R.T.B., will be established by the United States. The proposed Reversionary Trust document is attached as **Exhibit 6**. The Reversionary Trust will provide payment for R.T.B.'s care for the rest of

his life, including:

(a) Medical care;

(b) In-Home Attendant Care up to 8 hours a day until age 18; and then 10 hours a day from age 18 for life;

(c) Hospital and Emergency Room care;

(d) Residential Care Facilities;

(e) Therapy services;

(f) Medications, medical devices, appliances, supplies and testing;

(g) $10,000 toward a vehicle to transport R.T.B.;

(h) $15,000 for home modifications;

(i) Case management services; and

(j) Health insurance.

**11. Plaintiff Funded Supplemental Special Needs Trust**:

(a) Petitioners respectfully request the Court approve placement of R.T.B.'s net share of the upfront cash into a special needs trust to supplement the Reversionary Medical Trust established by the United States. The Legacy Enhancement Pooled Trust, Inc., a not-for profit corporation approved by the Social Security Administration and the Internal Revenue Service for such purposes, has established a Pooled Special Needs Trust for national use. Information on this corporate Trustee and Pooled Special Needs Trust is attached as **Exhibit 7**.

(b)    The Pooled Trust was created pursuant to, and is governed by 42 U.S.C. §1396p(d)(4)(C), to benefit individuals with disabilities.  Where other Special Needs Trust/Trustees require a minimum dollar value to establish an individual stand-alone special needs trust, these pooled special needs trust will accept deposits of any size. A separate account (sub-account) is maintained for each Beneficiary, such as R.T.B.  This allows disabled individuals with assets of comparatively smaller size to get a better return on their investment along with the benefits of a special needs trust, as well as reasonable Trustee fees. The proposed Master Special Needs Trust document as well as the Joiner for R.T.B.'s sub-account is attached as **Exhibit 8**.

(c)    The law firm of Brown Law LLC will make payment of the net upfront cash due to the minor R.T.B., anticipated to be $237,125.58 after payment of fees, costs and the final Medicaid lien, directly to R.T.B.'s Special Needs Trust sub-account.

**12.    Medical Expense/Medicaid Lien**: The State of Wisconsin, Department of Health Services (Medicaid) has a medical expense lien on the recovery in this action in the amount of $62,016.13, which must be paid out of the settlement. Please see **Exhibit 9**, the final lien letter from Wisconsin Division of Medicaid Services.  Petitioners and their attorneys have performed a reasonable and diligent search for other medical liens and have found none.

**13.    Parental recovery:** In addition to R.T.B.'s claims, Petitioners allege

that Mr. and Mrs. Breault also have separate claims under California law. They have provided extraordinary care for R.T.B. over the last five years and will continue to do so, likely for the rest of their lives. They have also suffered significant damages due to negligent infliction of emotional distress, which arose out of the same event, but the injuries are separate and distinct from those suffered by R.T.B. *See, Burgess v. Superior Court*, 2 Cal.4th 1064 at 1085 (Cal.1992)(physician has separate, direct duty to mother making it a distinct claim versus derivative from child's injuries.) The Court is respectfully requested to approve the allocation of Seventy-Five Thousand Dollars ($75,000) to Maya Breault and Twenty-Five Thousand Dollars ($25,000) to Richard Dylan Breault. Petitioners believe this amount is fair and reasonable given the significant harms and losses they have suffered, and that the total parental allocation represents only 3% of the gross settlement proceeds.

**14. Attorneys' Fees**:

(a)    The attorneys in this case have represented the Petitioners and pursued this case pursuant to, and in reliance on, a standard retainer agreement providing for the payment of attorneys' fees of twenty-five percent (25%) of the Settlement Amount. This fee agreement/percentage conforms to the guidelines set forth in 28 U.S. Code § 2678. Please see **Exhibit 10**, Fee agreement & Co-counsel agreement.

(b)    After Petitioners' attorney Anne Brown, of the law firm of Brown

Law LLC, spent hundreds of hours investigating the potential claims and ultimately concluded that the United States was negligent, that its negligence was a proximate cause of R.T.B.'s injuries, and there were significant damages, administrative claims were filed followed by an extensive administrative process involving the United States Navy. When that process did not successfully resolve the case, this lawsuit was filed in federal district court in Wisconsin (Petitioners' home state.) After several months of discovery in Wisconsin, venue was transferred to this Court and the entire discovery/litigation process re-started. At that time, Brian Findley of the law firm of Mulligan, Banham & Findley, was retained as California co-counsel.

(c) Thereafter, Petitioners' attorneys and support staff from the two law firms devoted hundreds of hours to litigation of the Petitioners' claims including, but not limited to, extensive written discovery involving over 17,000 documents, conducting depositions of critical fact witnesses; opposing a motion for change of venue, filing a motion to preclude the late addition of an affirmative defense, obtaining detailed expert witness disclosures outlining Petitioners' theories on liability, causation, and damages; devoting significant time to conducting discovery and preparing the case for trial; preparing for and participating in two settlement conferences and devoting extensive time to negotiating a fair and reasonable settlement in the best interests of R.T.B., and otherwise expending significant time preparing Petitioners' damage claims. Petitioners' attorneys have

been actively working on this case for over four years.

(d)     Petitioners' counsel respectfully submits that approval of attorneys' fee in the sum of $875,000.00 (to be split 50/50 between Petitioners' two law firms), representing 25% of the Settlement Amount, is fair and reasonable, particularly given the amount of time and effort devoted by Petitioners' counsel, their experience in handling similar cases, and the ultimate outcome culminating in a settlement in the amount of Three Million, Five Hundred Thousand Dollars ($3,500,000).     Please see **Exhibit 11**, Attorney Anne Brown's Declaration regarding fees and **Exhibit 12**, Attorney Brian Findley's Declaration regarding fees.

15.     **Litigation Costs**: In addition to attorneys' fees, Petitioners' attorneys, pursuant to and in reliance on, Petitioners written agreement to reimburse counsel for all reasonable expenses incurred in the investigation and litigation of the Petitioners' claims, incurred significant litigation costs. Attached as **Exhibit 13** is a line-item invoice of the litigation expenses incurred by Petitioners' attorneys, which totals $125,858.29. Expert fees represent 90% of costs advanced. This case was unique in that it was actually two cases in one - the obstetrical case and the resuscitation case, and thus required more experts.  This was further complicated by the fact the Defendant's broad defenses required Petitioners to retain additional experts in other specialties to cover all possible defenses. These disbursements have been fully explained to the Petitioners, who agree that the Petitioners' counsel

should be reimbursed for these costs. Petitioners' counsel respectfully submit to the Court that the expenses incurred to pursue the investigation and litigation of the Petitioners' claims are fair, reasonable, and necessary.

**16.    The Settlement is fair, reasonable, and in the best interest of R.T.B.:**

(a)    The final terms and conditions set forth in the Stipulation and Reversionary Trust are the product of extensive negotiations, two formal settlement conferences with federal Magistrate Judge Karen Crawford, and multiple communications between counsel for the parties to address the amount of the settlement, the structure of the settlement, and the allowable benefits that would be payable by the Reversionary Trust.

(b)    Multiple offers and counter-offers were exchanged by the parties. Petitioners' counsel devoted significant time explaining to the parents the risks and benefits of proceeding to trial. Further, each offer and counter-offer was discussed, and many options were considered by the parents regarding the proposed settlement and how the funds could be structured to best provide for R.T.B.'s future needs.

(c)    Ultimately, the Petitioners concluded that the proposed settlement (i) will help assure the care of their son, R.T.B., for the rest of his life; (ii) avoids the risks of litigation, including the possibility of no recovery at all, or a recovery that is less than the settlement amount; and (iii) avoids unnecessary delay

due to appeals that the Petitioners or the United States may pursue regarding any decision on the §1317 issue and/or in the event of an unfavorable disposition by the Court on the merits of the case.

**17. No Guardian Ad Litem needed**: Maya Breault, Richard Dylan Breault, and Petitioners' counsel represent that they have diligently and faithfully represented the interests of R.T.B. in this matter and respectfully contend that guardian ad litem is not necessary for R.T.B. However, if the Court decides a guardian ad litem is needed, Petitioners request this Petition be treated as including a request for appointment of a guardian ad litem.

**B.** **APPROVAL OF REVERSIONARY MEDICAL AND SPECIAL NEEDS TRUSTS**

Local Civil Rule 17.1(b)(3) allows consolidation of the approval of trust documents and the settlement in one ex parte hearing. Petitioners respectfully request the Court approve both the Reversionary Trust and the Special Needs Trust.

**1. Identity of the petitioners:** Please see paragraphs A(1)-(2), above.

**2. The terms and total amount of the settlement and the amount to go into the trust:** Please see paragraphs A(8)-(14), above.

**3. The circumstances giving rise to the settlement or judgment and a general description of the plaintiff's injuries and needs:** Please see paragraphs A(4)-(6), above.

**4. Suggested amount of bond:** Given both Trusts are managed by professional Trustees, Petitioners request bond be waived.

**5. The determinations required under California Probate Code 3604(b)(1-3) for establishment of a Special Needs Trust are met in this case:**

(1) R.T.B. has a disability that substantially impairs his ability to provide for his own care or custody and constitutes a substantial handicap. Please see paragraph A(5), above and Exhibit 2 (pediatric neurology expert report.).

(2) R.T.B. is likely to have special needs that will not be met without the trust. Petitioners' economist concluded the present value costs of R.T.B.'s special future care needs with a limited life expectancy was just over $9.6 million. Please see **Exhibit 14** (Dr. Edward Mantell -Economic Loss Summary page). The gross projected payout of the proposed settlement is approximately $5.7 million – approximately $4.2 million net after required deductions. See Exhibit 5, referenced in paragraph 8, above. Accordingly, R.T.B. is likely to have special needs that will be not be met without this trust, even when factoring in the Reversionary Medical Trust benefits.

(3) The money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of R.T.B. The amount to be paid to the reversionary medical trust is $2.1 million and to the special needs trust is approximately $237,000.00. Given the potentially uncovered needs set forth above, the money to be paid to the trust does not exceed the amount reasonably

necessary to meet the special needs of R.T.B.

**6.     Terms of the Trusts:**  Exhibits 6 and 8 set forth the specific terms of each trust.   They both are designed to cover R.T.B.'s special medical and care needs while preserving eligibility for federal and state benefits available to disabled individuals.    Upon R.T.B.'s death, any funds remaining in the Reversionary Trust revert back to the United States.  Any funds remaining in the Special Needs Trust will be either used to repay Medicaid for any funds expended to care for R.T.B., with any remainder distributed to his beneficiaries, or donated to charity by the Trustee as allowed by the Trust language.

**7.     Consent to Magistrate Approval of entire settlement:**  The   parties have consented to magistrate jurisdiction to approve the entire settlement under 28 U.S.C. §636(c) and as provided in Civil Local Rule 17.1(b)(3).

**8.     Request to appear via telephone or video conference:**  Petitioners live in Wisconsin and travel is difficult due to finances, because they have inflexible work schedules, and due to the dangers of travel during the pandemic, especially given they care for a severely handicapped child.  As a result, Petitioners request they be allowed to attend any hearing in this matter by telephone or video conference.

**WHEREFORE**, the Petitioners pray that an Order be entered by this Court:

(1)     approving the terms and conditions of the settlement as set forth in the Stipulation for Compromise Settlement and Release of Federal Tort Claims Act

Claims Pursuant to 28 U.S.C. § 2677;

(2)     approving the terms and conditions of the settlement as set forth in the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of R.T.B. a minor;

(3)     approving the terms and conditions of the Master Special Needs Trust and Joinder Agreement for the Benefit of R.T.B., a minor;

(4)     authorizing Maya Breault and Richard Dylan Breault, as parents and next friends of R.T.B., a minor, to sign the Stipulation, the Reversionary Trust, the Joinder agreement for the Special Needs Trust and any other documents that are necessary to consummate the settlement, and to provide any information and documentation necessary to complete the purchase of annuity contracts and the establishment of the Reversionary and/or Special Needs Trust;

(5)     approving the allocation of $254,144.09 to R.T.B. and the payment of such amount by Petitioners into the Special Needs Trust;

(6)     approving the allocation of $62,016.13 to the State of Wisconsin, Medicaid to satisfy the outstanding Medicaid lien.

(7)     approving the allocation of $75,000 to Maya Breault;

(8)     approving the allocation of $25,000 to Richard Dylan Breault;

(9)     approving the payment of attorneys' fees in the amount of $875,000.00 (50/50 to Brown Law and Mulligan, Banham & Findley) which is 25% of the settlement amount; and

(10) approving reimbursement of the litigation costs and expenses advanced by the law firms of Brown Law LLC and Mulligan, Banham & Findley in the sum of $125,858.29.

///

///

///

///

# AFFIRMATION AND SIGNATURES

We have read the foregoing Petition for Approval of Settlement and affirm that the statements contained therein are true and correct to the best of our personal knowledge and belief. We believe this settlement is in the best interest of our son R.T.B. as it provides financial support for his future care needs, and avoids the risk and the additional significant expense and delays of a trial and appeals.

We hereby request that the Court approve the settlement, trusts and the allocation of the proceeds, including fees and costs, as set forth above.

Dated: 10/27/2021

_Maya Breault_

Maya Breault, Individually and as Next Friend of R.T.B., her minor child

Dated: 10/27/2021

_Richard Dylan Breault_

Richard Dylan Breault, Individually and as Next Friend of R.T.B., his minor child

Respectfully submitted,

Dated: 10/28/21         s/Anne E. Brown
                              Attorney for Petitioners
                              browna@MilitaryMedicalMalpractice.com

                              s/Brian K. Findley
                              Attorney for Petitioners
                              findley@janmulligan.com

## **DECLARATION OF BRIAN K. FINDLEY, ESQ. SUPPORTING EXHIBITS**

I, Brian K. Findley, declare:

        1.     I am an attorney licensed to practice before all the courts of the State of California, am admitted to practice before the United States District Court for the Southern District of California, and am one of the attorneys of record for the Plaintiffs in this matter. I have personal knowledge of the matters in this declaration, and as to matters stated upon information and belief, I believe them to be true.

        2.     Attached to this Declaration as Exhibit 1 is a true and correct copy of the Naval Medical Center San Diego NICU Discharge Summary for R.T.B. It has been redacted.

        3.     Attached to this Declaration as Exhibit 2 is a true and correct copy of Stephen Glass, M.D.'s Rule 26 Expert Disclosure Report. It has been redacted.

4. Attached to this Declaration as Exhibit 3 is a true and correct copy of R.T.B.'s most current medical report and independent educational plan (IEP.) It has been redacted.

5. Attached to this Declaration as Exhibit 4 is a true and correct copy of the Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. §2677. It has been redacted.

6. Attached to this Declaration as Exhibit 5 is a true and correct copy of the Periodic Payment Illustration.

7. Attached to this Declaration as Exhibit 6 is a true and correct copy of the Irrevocable Reversionary Medical Trust.

8. Attached to this Declaration as Exhibit 7 is a true and correct copy of information regarding the proposed Trustee for the special needs trust, The Legacy Enhancement Pooled Trust, Inc.

9. Attached to this Declaration as Exhibit 8 is a true and correct copy of the proposed Master Special Needs Trust document as well as the proposed Joinder Agreement for R.T.B.'s sub-account.

10. Attached to this Declaration as Exhibit 9 is a true and correct copy of the final lien letter from Wisconsin Division of Medicaid Services.

11. Attached to this Declaration as Exhibit 10 is a true and correct copy of the Fee Agreement and Co-counsel agreement.

12.     Attached to this Declaration as Exhibit 11 is a true and correct copy of the Declaration of Anne E. Brown, one of Petitioners' attorneys, in support of attorneys' fees.

13.     Attached to this Declaration as Exhibit 12 is a true and correct copy of the Declaration of Brian K. Findley, one of Petitioners' attorneys, in support of attorneys' fees.

14.     Attached to this Declaration as Exhibit 13 is a true and correct copy of the invoice of the litigation expenses incurred by Petitioners' attorneys.

15.     Attached to this Declaration as Exhibit 14 is a true and correct copy of Dr. Edward Mantell's Rule 26(a) expert disclosure Economic Loss.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 10/28/21

s/Brian K. Findley
Brian K. Findley
findley@janmulligan.com

**\*INDEX TO EXHIBITS APPEARS ON FOLLOWING PAGE\***

# INDEX TO EXHIBITS

Exhibit 1 - Naval Medical Center San Diego NICU Discharge Summary for R.T.B.

Exhibit 2 - Stephen Glass, M.D.'s Rule 26 Expert Disclosure Report.

Exhibit 3- R.T.B.'s most current medical report and independent educational plan (IEP).

Exhibit 4 - Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. §2677.

Exhibit 5 - Periodic Payment Illustration.

Exhibit 6 - Irrevocable Reversionary Medical Trust.

Exhibit 7 - The Legacy Enhancement Pooled Trust, Inc.

Exhibit 8 - Master Special Needs Trust document and Joinder for R.T.B.'s sub-account.

Exhibit 9 – Final lien letter from Wisconsin Division of Medicaid Services.

Exhibit 10 - Fee Agreement and Co-counsel agreement.

Exhibit 11 - Declaration of Anne E. Brown, Esq. in support of attorneys' fees.

Exhibit 12 - Declaration of Brian K. Findley, Esq., in support of attorneys' fees.

Exhibit 13 - Invoice of the litigation expenses incurred by Petitioners' attorneys.

Exhibit 14 - Dr. Edward Mantell's Rule 26(a) expert disclosure Economic Loss Summary page for R.T.B.