

# Special Needs Trust Solutions

- Special Needs Trusts
- Pooled Special Needs Trusts
- Settlement Preservation

EXHIBIT 7
page 1

## TRUST & ASSET PLANNING, SIMPLIFIED

A personal injury or wrongful death case can have profound, life-altering implications. With financial security and physical well-being on the line, you may need assistance in determining the best strategy for the settlement funds.

If you are the parent or guardian of a minor child, then your first inclination is likely to establish a sense of security. If your settlement or your child's settlement is due to an injury, then there may be extensive physical limitations that require extensive medical care, as well as housing and auto accommodations.



Legacy Enhancement Trust offers a proactive, comprehensive trust planning and asset management approach that simplifies even the most complicated set of circumstances.

Our team has successfully assisted thousands of injured individuals across the country with developing trust and asset plans to last for years to come.

### WHY SHOULD YOU CHOOSE LEGACY ENHANCEMENT?

**The Mission**
We are a nonprofit organization dedicated to providing minors and individuals with disabilities with an affordable, reliable trust solution.

**The People**
When you choose Legacy Enhancement Trust, you can expect warm, friendly service. We return calls and process distribution requests quickly and can accommodate any language through a translation service.

**The Service**
In addition to having online access to your trust account, we offer a prepaid debit card that gives you instant access to your trust funds.

## A CENTRALIZED APPROACH



*Should I establish a trust?*

*How much liquidity do I need?*

*Is a structured settlement right for me?*

*How does a structured settlement work with a special needs trust?*

*How do I know what income I'll need in the future?*

*Should I invest my money? If so, how and when should I invest it?*

At this point, you have likely considered some of these questions and many more. Most people do not have the specialized knowledge needed to navigate trusts and asset management, so if you find yourself with more questions than answers, you're not alone. When combined with the emotional aspect of a wrongful death or personal injury case, it can feel impossible to make the right choice.

That's why we're here.

Legacy Enhancement Trust brings together industry-leading experts in trust administration and asset management, all under one roof. Our ultimate goal is to help you, the beneficiary, move forward with a plan that best meets your needs and objectives. We work diligently to treat each beneficiary as an individual, developing a sense of trust and providing long-term support to our clients.

EXHIBIT 7
page 2

**Toll-Free: (866)587-8306**
**www.legacyenhancement.org**

## OUR PROCESS

Our four-step process is designed to streamline the many variables involved in creating your trust and asset management plan.

### — 01 ANALYZE

Every trust beneficiary has different objectives, financial and medical needs, liquidity requirements, time horizons, and risk tolerance. We work closely with you, your family members and caregivers, your attorney, and your settlement consultant to ensure all stakeholders are on the same page.

### — 02 RECOMMEND

After careful analysis, we will establish our recommendations that best meet your requirements. Legacy Enhancement Trust offers a variety of trust and asset management solutions, allowing us to fully customize options to meet your needs.

### — 03 IMPLEMENT

Once you choose an option, we will provide you and your family with an implementation schedule explaining what needs to be done, when it needs to be done, and who needs to do it. With Legacy leading the implementation process, all pieces will be coordinated properly and efficiently.

### — 04 MONITOR

Legacy's investment management team will monitor and track your progress. From trust disbursements to asset allocation and risk management, we monitor consistently and coordinate with attorneys, insurance companies, and trustees to generate long-term success.

## TRUSTS & ASSET MANAGEMENT

How do our trust services and asset management teams work together? Simply put, one side handles the trust administration and legal requirements, while the other side focuses on investment management.

With so many moving pieces, having teams that work in tandem helps create the best possible outcome for you, the trust beneficiary.

| Trust Services | Asset Management Services |
|---|---|
| Plan design | Fiduciary approach |
| Drafting of trust documents | Third-party expertise |
| Coordination of needs & flexibility | Cash management |
| Distribution management | Model design |

From immediate financial needs and trust design to future income requirements and expert investment management, Legacy Enhancement Trust is here to help. For more information, contact us toll-free at (866)587-8306.







Protecting your assets
# PRESERVING YOUR LEGACY

**START PLANNING FOR YOUR FUTURE TODAY.**
To learn more, call us toll-free or visit our website.

Toll-Free: (866)587-8306
www.legacyenhancement.org

EXHIBIT 7
page 4

# Investment Policy Statement
# For
# Legacy Enhancement Trust

1. **Introduction**

   The Trustees of Legacy Enhancement Trust (LET) issues this statement.  The purpose of this statement is to foster a clear understanding of the Trusts investment objectives, policies and guidelines.  The assets governed by this statement are Trusts financial assets which are invested for safety of principal and long-term income.  The Trust will regularly review this statement and the managers adherence to it, with the intent of this statement to be both sufficiently specific to be meaningful and flexible enough to be practical.

2. **General Information**

   **Legacy Enhancement** is a non-profit corporation and shall operate exclusively for charitable purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code, or the corresponding section of any future Federal tax code. **Legacy Enhancement's purpose is to administer a pooled special needs trust and provide assistance and education to special needs individuals and their caregivers.**

3. **Management and Investment Objectives**

   a. It is recognized that the Trust has an indefinite time horizon, which runs concurrently with the existence of the trusts in perpetuity and as such the time horizon extends beyond normal market and interest-rate cycles.  This enables the Trust to take a reasonable level of short-term volatility in order to achieve favorable long-term investment returns.  It is expected that professional management and diversification will smooth volatility and improve consistency of returns.
   b. The two primary long-term financial objectives are for safety of principal and to preserve the real (i.e.; inflation-adjusted) purchasing power of the Trust for potential future distributions.  It is understood that it (Trust) will be providing a relatively predictable, stable stream of distributions that at least keeps pace with inflation over time.
   c. The Trusts objective is to earn a return, net of expenses, over the long-term (i.e. over most rolling five-year periods).  This return should compare favorably to its passive indices of its asset class (Citigroup Broad Investment Grade Treasury/Government 1-10 year) in which the funds are invested.
   d. In seeking to attain the investment objectives set forth, the Trustees and their advisors shall exercise prudence and appropriate care in accordance with the Uniform Prudent Management of Institutional Funds Act (UPMIFA).  This act requires fiduciaries to apply the standard of prudence "about each asset in the context of the portfolio of investments, as part of an overall strategy."

EXHIBIT 7
page 5

4. **Portfolio Construction**

   It is generally understood that all assets will be invested into money markets, government and corporate bonds, and similar "like-kind", income investments. It is also understood that even though the Trusts investment term is in perpetuity, its investments will be predominately invested in short and intermediate term bond-style investments in an effort to smooth returns. It will be designed with its passive index benchmark in mind (Citigroup Broad Investment Grade Treasury/Government 1-10 years).

   a. Money market investments as well as bonds may be used.
   b. U.S. Fixed income portfolios will be invested primarily in U.S. dollar denominated securities.
   c. The portfolio of these fixed income securities should have a weighted average credit quality of "A" or better, based on credit quality ratings of Moody's, S&P, or an equivalent nationally recognized credit rating agency.
   d. High-yield bonds may be used, to a maximum of 10% of total portfolio.
   e. International Bonds may be used, to a maximum of 20% of total portfolio.
   f. Real-estate income may be used, to a maximum of 15% of total portfolio.
   g. Alternative Investments (market-neutral, long-short, etc.) may be used to a maximum of 10% of total portfolio.
   h. Preferred stock may be used to a maximum of 5% of total portfolio.

   It should be noted that it is the policy of the Trust to never hold more than 2% of any individual non-governmental bond. The only equity positions allowed will be the incidental portions of mutual funds or ETF holdings. This may include some publicly traded real estate investments.

5. **Monitoring of Objectives and Results**

   a. All objectives and policies are in effect until modified by the Trust, which will review them periodically for their continued appropriateness.
   b. It at any time any manager believes that any policy guideline inhibits investment performance, it is the manager's responsibility to communicate this view to the Trust Investment Advisors.
   c. Investment managers will report the following information to the Trust quarterly:
      i. Total return (on time-weighted basis) in the aggregate, net of all commissions and fees;
      ii. Purchases and sales for the quarter.
      iii. Explanation for performance variance from stated benchmark.
   d. Regular communication concerning investment strategy and outlook is expected. Additionally, managers are required to inform the Trust promptly of any change in firm ownership or fundamental investment philosophy and of any significant change in organizational structure or professional personnel.
   e. The Trusts and its fiduciaries will periodically review the related services provided to the Pool, including custody services, performance evaluation and consulting.

EXHIBIT 7
page 6

# PS 18-007 Legacy Enhancement Master Pooled Trust Agreement

Date: October 13, 2017

## 1. Syllabus

This Regional Chief Counsel opinion concludes that the Legacy Trust is a valid, pooled trust because its provisions comply with all five conditions of the pooled trust exception for counting resources for Supplemental Security Income (SSI) purposes. Furthermore, the number holder's (NH) subaccount is exempt from the agency's resource counting rules for SSI purposes because it is irrevocable. Therefore, the NH's subaccount is eligible for the pooled trust exception and should not be considered a resource for SSI purposes.

## 2. Opinion

QUESTION PRESENTED

You asked whether the Legacy Enhancement Master Pooled Trust Agreement (Legacy Trust), and the accompanying Joinder Agreement for T~ (NH), qualify as a pooled trust under section 1917(d)(4)(c) of the Social Security Act (Act), as codified at 42 U.S.C. § 1396p(d)(4)(C). If the Legacy Trust qualifies as a pooled trust, you also inquired whether the NH's subaccount, established with her own funds after January 1, 2000, would be exempt from the Social Security Administration (agency's) resource counting rules for Supplemental Security Income (SSI) purposes.

ANSWER

We believe that there is support for the agency to conclude that the Legacy Trust qualifies as a pooled trust under section 1917(d)(4)(c) of the Act because its provisions comply with all five conditions for qualification for the pooled trust exception for counting resources for SSI purposes. See 42 U.S.C. § 1396p(d)(4)(C). Furthermore, we believe there is support for the agency to find that the NH's subaccount in the Legacy Trust established with the NH's own funds after January 1, 2000, is exempt from the agency's resource counting rules and should not be considered a resource for SSI purposes.

BACKGROUND

Legacy Enhancement is a Texas domestic nonprofit corporation. Legacy Enhancement created the Legacy Trust on May 18, 2016 "to establish a pooled trust fund to benefit individuals with disabilities," as defined by 42 U.S.C. § 1382c(a)(3), pursuant to 42 U.S.C. § 1396p(d)(4)(C). Legacy Trust, introductory paragraph. Article 1(B) also states that the Trustee retained the "sole and absolute discretion" to use the principal and income in a subaccount to provide a beneficiary with "items, benefits and services that the Trustee believes are reasonable and not otherwise available to him or her from any other source." Legacy Trust at art. 1(B). The Trust contains a choice-of-law provision indicating that it should be interpreted pursuant to the laws of Texas. See Legacy Trust, art. 11(D). T~ opened a subaccount in the Legacy Trust on her own behalf on February XX, 2017, via the Joinder Agreement.

EXHIBIT 7
page 7

ANALYSIS

I. Federal Law and Agency Policy: Trusts as SSI Resources

SSI is a general public assistance program for aged, blind, or disabled individuals who meet certain income and resource restrictions and other eligibility requirements. See 20 C.F.R. §§ 416.110, 416.202. "Resources" include cash or other liquid assets or any real or personal property that an individual owns and could convert to cash to be used for his or her support and maintenance. See 20 C.F.R. § 416.1201(a). "If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual . . . ." 20 C.F.R. § 416.1201(a)(1); see Program Operations Manual System (POMS) SI 01120.010(B).

When determining a claimant's eligibility for SSI, in general, pursuant to section 1613(e) of the Act (codified at 42 U.S.C. § 1382b(e)), the agency considers trusts created on or after January 1, 2000, from a disabled beneficiary's assets to be a resource to the extent that the trust is revocable, or, in the case of an irrevocable trust, to the extent that any payments can be made from the trust for the benefit of the disabled beneficiary. See 42 U.S.C. § 1382b(e)(3); POMS SI 01120.201. However, the rules in section 1613(e), as codified at 42 U.S.C. § 1382b(e), do not apply to trusts described in section 1917(d)(4) of the Act, as codified at 42 U.S.C. § 1396p(d)(4), the Medicaid trust exceptions, which are commonly known as special needs and pooled trust exceptions. See 42 U.S.C. §§ 1382b(e)(5), 1396p(d)(4)(A), (C); POMS SI 01120.201, SI 01120.203. This legal opinion focuses upon the pooled trust exception.

A pooled trust is a trust that contains many different individuals' assets, segregated into separate subaccounts. POMS SI 01120.203(B)(2)(a). As stated, a pooled trust that qualifies as a Medicaid payback trust under section 1917(d)(4)(C) is exempt from the Act's normal rules for counting trust assets as a resource. See 42 U.S.C. §§ 1382b(e)(5), 1396p(d)(4)(C); POMS SI 01120.203(B)(2). To qualify for the pooled trust exception under the Act, a trust must contain assets belonging to a disabled beneficiary and must satisfy all of the following conditions:

1. The trust must be established and managed by a non-profit association;

2. A separate account must be maintained for each disabled beneficiary of the trust; but, for purposes of investment and management of funds, the trust may pool these accounts;

3. Accounts in the trust must be established solely for the benefit of disabled individuals (as defined in section 1382c(a)(3) of the Act);

4. Accounts in the trust must be established by the parent, grandparent, or legal guardian of such disabled beneficiaries, by such disabled beneficiaries, or by a court; and

5. The trust must provide that to the extent that any amounts are remaining in the disabled beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust must pay to the State the amount remaining up to an amount equal to the total amount of medical assistance paid on behalf of the disabled beneficiary under the State Medicaid plan.

42 U.S.C. §§ 1382b(e)(5), 1396p(d)(4)(C); POMS SI 01120.203(B)(2).

EXHIBIT 7
page 8

If a trust qualifies as a pooled trust under 42 U.S.C. § 1396p(d)(4)(C), we also consider whether the sub-account is excluded under the regular resource counting rules. See POMS SI 01120.200, SI 01120.203. Under the regular resource counting rules, the agency considers a trust a resource, attributable to the beneficiary, if the beneficiary has the legal authority to revoke or terminate the trust and then use the funds to meet his or her food or shelter needs, if the beneficiary can direct the use of the trust principal for his or her support and maintenance under the terms of the trust, or if the beneficiary can sell her beneficial interest in the trust. See 20 C.F.R. § 416.1201(a); POMS SI 01120.200(D)(1)(a). We next apply the pooled trust exception and regular resource rules to the Legacy Trust.

II. Application of the Pooled Trust Exception to the Legacy Trust

A. Condition One: Trust established and managed by a non-profit association.

The Legacy Trust satisfies the first condition that the trust be established and managed by a non-profit association. See 42 U.S.C. § 1396p(d)(4)(C)(i); POMS SI 01120.203(B)(2). Legacy Enhancement established the Legacy Trust. As stated above, Legacy Enhancement is a non-profit corporation and has submitted letters from the United States Internal Revenue Service and the Texas Office of the Secretary of State documenting its non-profit status. Consequently, the Legacy was established by a non-profit association, as required by the first condition.

Although the Legacy Trust permits the trustee to appoint a fund manager, Article 8(C) specifies that "the Trustee shall maintain ultimate managerial control" and "[t]he use of for-profit entities is always subordinate to the non-profit Trustee." Legacy Trust at art. 8(C). POMS SI 01120.225(E) states that the agency will not routinely question the relationship between a non-profit entity and contracted, for-profit entities. Under these circumstances, the Legacy Trust complies with POMS 01120.225(D)'s requirement that any for-profit entity retained to help manage the trust must always be subordinate to the non-profit managers of a pooled trust. Accordingly, the Legacy Trust satisfies the first condition of 42 U.S.C. § 1396p(d)(4)(C) and POMS SI 01120.203(B)(2).

B. Condition Two: Separate accounts maintained for each beneficiary.

The Legacy Trust satisfies the second condition, which requires that separate accounts be maintained for each beneficiary, even though funds may be pooled for investment and management purposes. See 42 U.S.C. § 1396p(d)(4)(C)(ii); POMS SI 01120.203(B)(2). Article 3(A) establishes that the Trustee must maintain separate accounts, which the Trustee may pool solely for investment and management purposes, for each beneficiary. Legacy Trust at art. 3(A). Accordingly, this condition is satisfied.

C. Condition Three: Trust must be established solely for the benefit of disabled individuals.

We also find that the Legacy Trust satisfies the third condition, which requires that accounts in a trust solely benefit disabled individuals. See 42 U.S.C. § 1396p(d)(4)(C)(iii); POMS SI 01120.203(B)(2). The Legacy Trust specifically invokes 42 U.S.C. § 1396p(d)(4)(C) and states that it is intended "to establish a pooled trust fund to benefit individuals with a disability [as defined under 42 U.S.C. § 1382c(a)(3)]." Legacy Trust at Introduction (brackets in original). Only an individual with a disability may submit a Joinder Agreement and thus join the pooled trust. Legacy Trust at art. 2.

EXHIBIT 7
page 9

We do note that the Legacy Trust permits the Trustee to amend it at any time, which under different circumstances might trigger concerns about the potential for the Legacy Trust to benefit non-disabled individuals, but here amendment is permitted only "to comply with changes in federal and state laws and regulations." Legacy Trust at art. 4(B); see also art. 2 (noting that Joinder Agreements are irrevocable but subject to amendment for well-being of beneficiary or as required under federal or state law or regulations). Furthermore, the Legacy Trust specifies that such an amendment may not "change or affect the interests or rights of a sub-account beneficiary." Id. Thus, we do not believe the Trustee has the authority to amend the trust so as to impermissibly benefit non-disabled individuals. As a result, there is support for the agency to conclude that the Legacy Trust satisfies the third condition.

D. Condition Four: Accounts established by the individual, parent, grandparent, legal guardian, or court.

The Legacy Trust satisfies the fourth condition that accounts in the trust are established by the individual, a parent, grandparent, legal guardian, or the court. See 42 U.S.C. § 1396p(d)(4)(C)(iii); POMS SI 01120.203(a), (f). The Legacy Trust only permits parents, grandparents, legal guardians, beneficiaries themselves, and courts to complete and sign a Joinder Agreement. See Legacy Trust at art. 2.

E. Condition Five: State reimbursed for medical expenses upon death of beneficiary.

The Legacy Trust satisfies the fifth condition, which requires that upon a beneficiary's death, a trust reimburse the State for medical expenses paid on behalf of the disabled beneficiary under the State Medicaid plan, to the extent the funds are not retained by the trust. See 42 U.S.C. § 1396p(d)(4)(C)(iv); POMS SI 01120.203(a), (g). Here, the Legacy Trust explicitly states that it will "pay to the State(s) the amounts remaining up to an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State Medicaid plan(s)" to the extent funds are not retained by the Legacy Trust. Legacy Trust at art. 7(d). Furthermore, the expenditures that take priority over Medicaid reimbursement—taxes due to the state or federal government and reasonable administration fees—are permissible under POMS SI 01120.203(B)(3)(a) (permitting expenditures for state and federal taxes and reasonable administration fees prior to Medicaid reimbursement). See Legacy Trust at art. 7(a), (b).

Accordingly, we believe that there is support for the agency to conclude that the Legacy Trust's provisions comply with all five conditions under 42 U.S.C. § 1396p(d)(4)(c) and that it qualifies as a pooled trust. If a trust qualifies as a pooled trust under 42 U.S.C. § 1396p(d)(4)(C), we also consider whether the sub-account is excluded under the regular resource counting rules. See POMS SI 01120.203(B)(2)(a) ("CAUTION: A trust which meets the exception to counting the trust under the SSI statutory trust provisions of 1613(e) must still be evaluated under the instructions in SI 01120.200 to determine if it is a countable resource."). Thus, we address this issue next.

III. Application of the Agency's Regular Resource Counting Rules for SSI to the NH's Subaccount

The NH opened a subaccount in the Legacy Trust on her own behalf on February 26, 2017, via the Joinder Agreement. The NH's subaccount is exempt from the SSI statutory trust provisions because the Legacy Trust, in combination with the Joinder Agreement, qualify for the pooled trust exception, as explained above. See 42 U.S.C. §§ 1382b(e)(5), 1396p(d)(4)(C); POMS SI 01120.203(B)(2). However, we must still evaluate whether the subaccount qualifies as a countable resource under the regular resource counting rules pursuant to POMS SI 01120.200. See POMS SI 01120.203(B)(2)(a). The agency applies the

EXHIBIT 7
page 10

regular resource rules to determine whether a trust that is established with a beneficiary's own assets is a resource. See POMS SI 01120.200(D).

Under the regular resource counting rules, the agency considers a trust a resource, attributable to the beneficiary, if the beneficiary has the legal authority to revoke or terminate the trust and then use the funds to meet his or her food or shelter needs, if the beneficiary can direct the use of the trust principal for his or her support and maintenance under the terms of the trust, or if the beneficiary can sell her beneficial interest in the trust. See 20 C.F.R. § 416.1201(a); POMS SI 01120.200(D)(1)(a).

Here, the NH's subaccount does not qualify as a resource under our resource counting rules. The NH's subaccount is irrevocable. See Legacy Trust at arts. 2, 4(A); see also Joinder Agreement at art. 1. Thus, the beneficiary does not have the legal authority to revoke or terminate the trust and use the funds to meet his or her food or shelter needs. See POMS SI 01120.200(D)(1)(a).

Furthermore, the Legacy Trust contains a spendthrift provision stating that none of the principal or income of a beneficiary's sub-account can be anticipated, assigned, encumbered, or otherwise subject to creditors' claims; that beneficiaries have no right to direct their subaccount's funds or compel payments from the subaccount; and that neither the principal nor income may be made available to beneficiaries. See Legacy Trust at arts. 6(A), (B), (C); see also Joinder Agreement at art. 2 & art. 2(e), (g). Beneficiaries do not have any right to mandatory, periodic payments; rather, distributions are made at the sole judgment and discretion of the Trustee. See Legacy Trust at art. 5(B), (C); see also Joinder Agreement at art. 2(e), (g). Thus, the beneficiary cannot direct the use of the trust principal for his or her support and maintenance under the terms of the trust, and cannot sell her beneficial interest in the trust. POMS SI 01120.200(D)(1)(a). Because the trust is irrevocable and the beneficiary cannot direct the use of the trust principal for her support or sell her beneficial interest in the trust, the NH's subaccount is exempt from the agency's resource counting rules and should not be considered a resource for SSI purposes.

CONCLUSION

We believe that the agency may reasonably conclude that the Legacy Trust is a valid, pooled trust under 42 U.S.C. § 1396p(d)(4)(c) because its provisions comply with all five conditions for the pooled trust exception for counting resources for SSI purposes. Furthermore, the NH's subaccount is not a resource under the agency's regular resource counting rules pursuant to POMS SI 01120.200(D)(1)(a). Therefore, the NH's subaccount is eligible for the pooled trust exception and should not be considered a resource for SSI purposes.

EXHIBIT 7
page 11



## MASTODON
ADVISORY GROUP

**Portfolio Snapshot**
Combined Account Portfolio

Prepared for: Legacy Enhancement Trust

Period: 11/22/16-9/2/21

### Summary    As of: 9/2/21

#### Portfolio Performance

| PORTFOLIO | SELECTED PERIOD ($) | LAST QUARTER ($) | YEAR TO DATE ($) | LAST YEAR ($) | SINCE START DATE ($) |
|---|---|---|---|---|---|
|  | 11/22/16 - 9/2/21 | Q2,21 | 9/2/21 | 2020 | 11/22/16 |
| GAIN/LOSS |  |  |  |  |  |
| Realized |  |  |  |  |  |
| Unrealized |  |  |  |  |  |
| Beginning Value |  |  |  |  |  |
| Net Contribution |  |  |  |  |  |
| Change in Value |  |  |  |  |  |
| Ending Value |  |  |  |  |  |
| Return | 3.63% | 1.60% | 2.22% | 5.87% | 3.63% |

### Account Performance

| ACCOUNT | START DATE | VALUE ($) | % OF TOTAL | SELECTED PERIOD (%) | LAST QUARTER (%) | YEAR TO DATE (%) | LAST YEAR (%) | SINCE START DATE (%) |
|---|---|---|---|---|---|---|---|---|
|  |  | 9/2/21 | 9/2/21 | 11/22/16 - 9/2/21 | Q2,21 | 9/2/21 | 2020 |  |
| XXXXX2184 | 11/22/16 |  | 100.00 | 3.63 | 1.60 | 2.22 | 5.87 | 3.63 |

Accounts are not custodied at Cambridge. The data is provided from various sources, please refer to the disclosure for detail.

Prepared by: Mr. Warren Bane Mastodon Advisory Group

CAAP Annual Performance Report created on: 9/3/21.

Incomplete if presented without accompanying disclosure pages



# MASTODON
ADVISORY GROUP

## Portfolio Snapshot
Combined Account Portfolio

Prepared for: Legacy Enhancement Trust

As of: 9/2/21

## Asset Type



| ASSET TYPE | CURRENT ALLOCATION (%) | VALUE ($) |
|---|---|---|
| FIXED INCOME | 65.20 | |
| CASH OR EQUIVALENTS | 9.74 | |
| REAL ESTATE | 9.28 | |
| NON-CLASSIFIED | 6.81 | |
| ALTERNATIVE | 5.45 | |
| PREFERRED STOCK | 3.52 | |
| **Total:** | **100%** | |

## Investment Objective

| INVESTMENT OBJECTIVE | CURRENT ALLOCATION (%) | VALUE ($) |
|---|---|---|
| SHORT-TERM LOW QUALITY | 40.70 | |
| MULTI-SECTOR BOND | 16.41 | |
| REITS | 8.02 | |
| ALTERNATIVE | 5.45 | |
| CASH OR EQUIVALENTS | 5.42 | |
| EMERGING MARKETS BOND | 4.98 | |
| MONEY MARKET-TAXABLE | 4.31 | |
| FIXED INCOME | 3.52 | |
| INTERMEDIATE-TERM LOW QUALITY | 2.70 | |
| SHORT-TERM HIGH QUALITY | 2.64 | |
| INTERMEDIATE-TERM MEDIUM QUALITY | 1.72 | |
| LARGE CAP - BLEND | 1.52 | |
| REAL ESTATE | 1.26 | |
| OTHER | 1.35 | |
| **Total:** | **100%** | |

Accounts are not custodied at Cambridge. The data is provided from various sources, please refer to the disclosure for detail.

Prepared by: Mr. Warren Bane Mastodon Advisory Group

CAAP Annual Performance Report created on: 9/3/21.

Incomplete if presented without accompanying disclosure pages

EXHIBIT 7
page 13