ANNE E. BROWN
MN Bar# 187008/*pro hac vice*
BROWN LAW LLC
310 4th Ave. S., Suite 5010
Minneapolis, MN 66415
Phone: (651)695-8789
Fax: (877) 695-8755
browna@militarymedicalmalpractice.com

JANICE F. MULLIGAN, CA BAR # 99080
BRIAN K. FINDLEY, CA BAR# 251172
MULLIGAN, BANHAM & FINDLEY
2442 Fourth Avenue, Suite 100
San Diego, CA 92101
Phone: (619) 238-8700
Fax: (619) 238-8701
mulligan@janmulligan.com
findley@janmulligan.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.T.B., A MINOR, BY AND THROUGH HIS PARENTS AND NEXT FRIENDS, RICHARD D. BREAULT AND MAYA M. BREAULT; RICHARD D. BREAULT, INDIVIDUALLY; AND MAYA M. BREAULT, INDIVIDUALLY,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO.: 19-CV-2305-W(KSC)<br><br>**DECLARATION OF ANNE E. BROWN IN SUPPORT OF EX PARTE PETITION FOR APPROVAL OF MINOR'S COMPROMISE AND FOR APPROVAL OF MINOR'S TRUSTS** |

I, Anne E. Brown, declare:

1. I am one of the attorneys of record for the Plaintiffs in this matter. I am an attorney in good standing admitted to practice in the Supreme Court of Minnesota, the U.S. District Court for the District of Minnesota, and the 8th Circuit Court of Appeals, among other courts, since 1987. I am appearing pro hac vice in this action. I have personal knowledge of the matters in this declaration, and as to matters stated upon information and belief, I believe them to be true.

2. The Petitioners, through their counsel, negotiated a final settlement of all their claims against the United States. A petition for approval of settlement is being filed with this court and this affidavit is filed to supplement that petition and provide the court with further information in support of the attorneys' fees.

3. Subject to the Court's approval, as well as approval of the United States Department of Justice and the United States Attorney General, the United States will pay the sum of $3,500,000 which will include both upfront cash and future periodic payments to be paid to a reversionary trust on behalf of the minor petitioner R.T.B.

4. This affidavit summarizes the legal services performed on behalf of the petitioners that culminated in the final settlement, and discusses the factual and legal reasons that support attorney's fees equal to 25% of the settlement amount as allowed by federal statute and as agreed to by Petitioners in the contingency fee contract.

5. R.T.B. was diagnosed with permanent brain injuries following his traumatic birth on April 16, 2016. Petitioners contacted me thereafter in mid-2017, over four years ago.

6. My preliminary investigation confirmed that, among other things, the potential malpractice claims involved the possible mismanagement of the labor and delivery as well as the immediate neonatal period. In addition, it was clear that the timing and cause of R.T.B.'s brain injuries would be a critical issue.

7. After I conducted an extensive investigation into the material facts, applicable medical literature and standards of care, as well as the applicable law, I counseled Petitioners as to their options for pursuit of the case. They agreed to retain me to represent them in the litigation and signed a written fee agreement that specifically states the attorneys' fees, after a lawsuit is filed, will be 25% of the gross amount recovered as provided by 28 USC §2678.

8. Prior to becoming a lawyer, I was a registered nurse practicing in the area of high-risk obstetrics, giving me unique experience and background for handling birth injury cases. I concentrate my practice in the evaluation and litigation of cases involving children and newborns who have suffered catastrophic injuries (including cerebral palsy and other neurological and cognitive disabilities), and for mothers who suffer injuries during prenatal period, labor and delivery, and/or the postpartum period. I have been successfully handling complex medical malpractice injury cases for more than 32 years.

9. I limit my practice exclusively to representation of military families who have been injured at military facilities. I have represented injured military dependents all over the United States as well as at many military bases overseas including those in Japan, Germany, Italy, Korea, and more.

10. Our job in this case was to determine, among other things: (a) whether the agents, servants, and employees of the United States deviated from applicable standards of care; (b) the cause of R.T.B.'s brain injury; (b) whether the brain damage was the direct and proximate result of the acts and/or omissions of the United States; and/or (d) whether the acts and/or admissions of the United States were substantial factor causing R.T.B.'s injuries. We were also faced with the question of whether the minor had a shortened life expectancy and if so, how that may affect the measure of damages under the laws California.

11. Initially I secured and reviewed the prenatal records, the labor and delivery records, the newborn records, and all of the subsequent treating physician and therapy records. This constituted thousands of records. My review confirmed that this case involved complex questions of law and medicine as well as potential causation issues concerning the timing and etiology of the events leading to R.T.B.'s brain damage.

12. The medical and legal issues in this case are complex, and any lawyer undertaking the responsibility of representing the plaintiffs in this manner has to have knowledge of many diverse subjects including, but not limited to: electronic

fetal monitoring and the identification of reassuring, nonreassuring and abnormal category I, II and III patterns; prenatal care, management of labor, cesarean section, placental pathology, fetal hypoxia, fetal ischemia, fetal asphyxia, cord blood, neonatal blood gases, ultrasound, CT scan and MRI brain imaging techniques; neonatal resuscitation, pediatric neurology, anesthesiology, critical newborn care, the life expectancy of brain-damaged newborns, and the future care needs for brain damaged newborns.

13. After completing the initial investigation and review of the case, I determined that it would take a significant amount of time and expense to successfully handle the claims and defenses, especially given it would require more experts than even the usual birth injury case because there were two distinct areas of negligence.

14. Brian Findley, of Mulligan, Banham & Findley joined the trial team as California co-counsel in October 2019. Co-counsel Mr. Findley and I agreed to devote the necessary time and assume all of the financial risk in order to properly investigate and litigate the claims of the plaintiffs under federal and California law. This meant limiting the number of other cases handled by the firms to some extent.

15. To successfully pursue all of the claims, it was necessary to contact and consult with well-qualified experts in: pediatric anesthesiology, anesthesiology, neuroradiology, obstetrics, neonatology, pediatric radiology,

pediatric ENT, pathology as well as an economist and life care planner. We devoted substantial time working with these experts, as they prepared detailed reports that ultimately very likely significantly contributed to reaching a settlement of this case.

16. This case involved collecting, reviewing and analyzing over 17,000 pages of medical records, relevant policies and procedures, as well as depositions of the plaintiffs and 12 key defense witnesses located around the world, all done during the COVID pandemic. We also opposed a change of venue motion and filed a motion to preclude the late addition of an affirmative defense.

17. A life care planner was engaged and considerable amount of time over a period of almost one year was spent collecting, providing and proving detailed supportive information to that expert to help develop a plan that would realistically take care of R.T.B. for the rest of his life.

19. Settlement negotiations involved multiple offers and counter offers in consultation with an economist and structured settlement specialist to provide the parents with potential options to provide funding for the child's needs as well as to prepare appropriate counter-offers and evaluate the reasonableness and appropriateness of the United States' proposals. There was debate and negotiation with the United States about the language to be used for allowable benefits in the Medical Trust.

20. I and my co-counsel fully devoted ourselves to this case without any guarantee of recovery. This is especially true because of the difficult issues inherent in all medical malpractice cases including, but not limited to: (1) the complex nature of the medical issues; (2) the legal standard for the admission of expert opinions; (3) the difficulty in retaining qualified experts to testify in such cases; (4) the high cost to pursue such cases given the number and quality of experts required; (5) the uncertainty of securing a favorable result; (6) the obstacles that generally rise in every case regarding causation in general and the burden of proving that the defendant's acts or omissions caused the injury or were a substantial factor in bringing about the plaintiff specific injury.

21. Cerebral palsy cases always involve responding to significant causation and damage defenses which require an extraordinary personal commitment of time and expense. Therefore, we participate in only a limited number of cases at a time. Moreover, both firms agreed to advance all the cost and pay for the litigation expenses, without interest charged over the four years of litigation, with no guarantee that these expenses would be recovered.

22. Federal courts have consistently held that the statutory fee percentage of 25%, should be approved in an FTCA case, when it was agreed to by the Plaintiffs in the fee contract. For example, in *Jackson v. United States*, 881 F.2d 707, 713 (9th Cir. 1989), the Court held that Section 2678 unambiguously permits an attorney to collect on a contingency fee basis up to 25 percent of the recovery. It

was noted that the legislative history to this provision indicates that anything less than 25 percent is deemed to be a matter of private negotiation between the attorney and his client. See S.Rep. No. 1327, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News 2515,2521; see also *Hiller v. United States*, No. 05-cv-01620 SBA, 2008 WL 4534052, at *5 (N.D.Cal. Sept. 30, 2008) (citing *Jackson* for the point that "the district courts *must* accept any agreement between the plaintiffs and their counsel which does not exceed 25% of the judgment rendered)(emphasis in the original); *Godwin v. Schramm*, 731 F.2d 153, 158 (3d Cir. 1984) (noting that the FTCA originally required the district court to review fee arrangements but was amended to state that attorneys simply could not charge more than 25%, and quoting S.Rep. 1327, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Ad.News 2515, 2521 to show that the authors of the 1966 amendment explained: "The actual amount of attorneys' fees within the statutory limit ... is made a matter for determination between the litigant and his attorney."); *see e.g., Robak v. United States*, 658 F.2d 471, 479–80 (7th Cir. 1981)(since Congress has already spoken on the subject of appropriate fees, a district court has no discretion to amend a privately negotiated fee arrangement in an FTCA case as long as the percentage is 25% or below.)

23. Federal courts have also held that the public policy behind the FTCA amendment weighs in favor of granting the statutory 25% fee in FTCA cases. *See Joe v. United States*, 772 F.2d 1535, 1536–37 (11th Cir. 1985) ("Section 2678 was

amended in 1966, at which time Congress raised that limit on attorneys' fees from 20 percent to the present level of 25 percent. The legislative history of that amendment indicates that its purpose was to 'assure competent representation and reasonable compensation' in matters litigated under the FTCA. S.Rep. No. 1327, 89th Cong., 2d Sess. (1966), reprinted in 1966 U.S. Code Cong. & Ad. News 2515, at 2520. The increase was intended to encourage attorneys to take claims under the FTCA, and to bring attorneys' fees under that act 'more nearly in line with those prevailing in private practice.' *Id.*"); *Shaw v. United States*, No. CIV 17-0147 JB/LF, 2018 WL 3598513, at *9 (D.N.M. July 26, 2018) ("This legislative history shows that Congress' intent in amending the FTCA's attorney's fees provision was to incentivize good attorneys to take FTCA cases. As Congress recognized, good attorneys will not take FTCA cases if they cannot earn what they would normally receive in private practice.")

24. Federal courts have routinely decided that a 25% fee in these FTCA medical malpractice cases was fair and reasonable.[1]

---

[1] *I.A. ex rel. Acuna v. United States*, No.1:11-CV-00406-LJO, 2012 WL 6097066, at *3 (E.D. Cal. Dec. 7, 2012), report and recommendation adopted, No. 1:11-CV-00406-LJO, 2012 WL 6194194 (E.D. Cal. Dec. 12, 2012); *Corrigan v. United States*, 609 F. Supp. 720, 733 (E.D. Va. 1985) ("As provided by the Federal Tort Claims Act, the Court awards 25% . . . as attorney's fees in this action."), *rev'd on other grounds*, 815 F.2d 954 (4th Cir. 1987); *Waters v. United States*, No. CV 9:06-2438-PMD, 2008 WL 11349818, at *2(D.S.C. Mar. 31, 2008); *Gerow v. United States*, No. 93-CV-1198 (RSP/GJD), 1997 WL 538910, at *5 (N.D.N.Y. Aug. 26, 1997); *Fair v. United States*, No. 12-CV-6062 MKB, 2014 WL 2862658, at *2 (E.D.N.Y. June 23, 2014); *D.L.G. ex rel. Gomez v. United States*, No. 12-CV-

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 28, 2021

                s/Anne E. Brown
                Anne E. Brown

---

7526 RA, 2015 WL 6736163, at *2 (S.D.N.Y. Nov. 3, 2015); *Coleman v. United States*, No. CIV.A. 04-3994, 2005 WL 2230319, at *2 (E.D. Pa. Sept. 13,2005); *Garcia v. United States*, No. 2:16-CV-168, 2018 WL 889433, at *3 (M.D. Fla.Jan. 26, 2018), *report and recommendation adopted*, 2018 WL 838975 (M.D. Fla. Feb. 13, 2018); *Meyers v. United States*, No. 6:13-CV-1555-ORL, 2014 WL 5038585, at *5 (M.D. Fla. Sept. 29, 2014); *A.G.R. by & Through Rios v. United States*, No. 2:18-CV-342, 2019 WL 454449, at *3 (M.D. Fla. Jan. 31, 2019), *report and recommendation adopted*, No. 2:18-CV-342, 2019 WL 447868 (M.D. Fla. Feb. 5, 2019); *Calvin v. United States*, No. 2:15-CV-04029-NKL, 2015 WL 9244601, at *3 (W.D. Mo.Dec. 17, 2015); *Oliva v. United States*, No. 1:15-CV-1060, 2016 WL 7665536, at *4 (W.D. Mich. Dec. 22, 2016), *report and recommendation adopted*, No. 1:15-CV-1060, 2017 WL 76914 (W.D. Mich. Jan. 9, 2017); *Rodriguez-Densley v. United States*, No. 5:17-CV-00026-TES, 2019 WL 355531, at *7 (M.D. Ga. Jan. 29, 2019); Order Approving Settlement, *Pauley v. United States*, 2014 WL 4742141 (S.D.W.Va.); Order Approving Settlement, *Gurung v. United States*, 2017 WL 2805583 (M.D.Pa.).