UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.T.B., a minor, by and through his parents and Next Friends, RICHARD D. BREAULT and MAYA M. BREAULT; RICHARD D. BREAULT, individually; and MAYA M. BREAULT, individually,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.:  19-cv-2305-W(KSC)<br><br>**REPORT AND RECOMMENDATION TO APPROVE MINOR'S COMPROMISE**<br><br>**[ECF No. 56]** |

On October 28, 2021, Plaintiffs filed an *ex parte* petition for approval of Minor's Compromise for their minor child, R.T.B.  ECF No. 56 ("Petition").  This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 17.1 of the United States District Court for the Southern District of California.  After reviewing the Petition and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the District Judge **GRANT** the Petition.

///

///

///

# BACKGROUND

On April 12, 2019, Plaintiffs R.T.B., a minor, by and through his parents and Next Friends, Richard D. Breault and Maya M Breault; Richard D. Breault, individually; and Maya M. Breault, individually, initiated a complaint against Defendant for medical malpractice and negligence under the Federal Tort Claims Act. See ECF No. 1 ("Complaint"); see also ECF No. 56 at 2-3. Minor Plaintiff R.T.B. is a five-year old male born April 16, 2016, who suffers from cerebral palsy and global developmental delays. ECF No. 56 at 3. The claims arise from injuries sustained by R.T.B. during and shortly after his birth at Camp Pendleton Naval Hospital, including severe, permanent brain damage known as hypoxic-ischemic encephalopathy. Complaint at 4; see also ECF No. 56 at 2. Plaintiffs claim that as a result of Defendant's conduct R.T.B. "will never live independently, will never work, and will require 24/7 attendant care, as well as specialized medical care for the rest of his life." ECF No. 56 at 3.

With the help of Magistrate Judge Karen S. Crawford, the parties reached a tentative settlement on September 23, 2021. See ECF No. 54. On October 28, 2021, Plaintiffs filed an *ex parte* Petition for Approval of Minor's Compromise and for Approval of Minor's Trusts. ECF No. 56. The Petition was supported by a declaration executed by Plaintiffs' counsel. ECF No. 56-11, Declaration of Anne E. Brown ("Brown Decl."); see also ECF No. 56-12, Declaration of Brian K. Findley ("Findley Decl."). On October 29, 2021, the undersigned was assigned to handle the Minor's Compromise. ECF No. 57.

# CONSENT TO MAGISTRATE JUDGE

Rule 17.1(a) of the Local Rules for the Southern District of California provides that "[t]he parties may, with district judge approval, consent to magistrate judge jurisdiction under 28 U.S.C. §636(c) for entry of an order approving the entire settlement or compromise." CivLR 17.1(a). Rule 17.1(b)(3) states that "[s]hould money or property be held in a trust for a minor or incompetent, the proposed trust instrument must be submitted to a magistrate judge on an ex parte petition for review and approval before the settlement is approved or the judgment is entered." CivLR 17.1(b)(3). Rule 17.1(b)(3) provides that the parties may consent to magistrate judge jurisdiction without district judge approval. Id. In the Petition, Plaintiffs state that the

"parties have consented to magistrate jurisdiction to approve the entire settlement under 28 U.S.C. §636(c) and as provided in Civil Local Rule 17.1(b)(3)." See ECF No. 56 at 15. As a result, this Court has the authority to evaluate the proposed trust instruments pursuant to Rule 17.1(b)(3) but, because the parties did not obtain approval from District Judge Whelan for Magistrate Judge Major to approve the entire settlement or compromise in accordance with Rule 17.1(a), this Court does not have the final authority to approve the entire compromise and must submit that decision to Judge Whelan via this Report and Recommendation.

**IMPROPER APPROVAL PROCEDURE REQUIRED BY THE UNITED STATES**

In the Petition, Plaintiffs state that the settlement has not yet been approved by "the Department of Justice Torts Branch, and the Assistant Attorney General of the United States." ECF No. 56 at 5; see also ECF No. 56-4 at 10 (stating that the settlement is not final as it is subject to a number of conditions including that "[t]he Attorney General or the Attorney General's designee must approve the terms and conditions of the settlement and authorize the attorney representing the United States to consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this [Settlement Agreement] and the Reversionary Trust"). Because the settlement was not final, the Court declined to provide an advisory opinion as to the reasonableness of the tentative settlement. ECF No. 58.

At a hearing on the issue, the AUSA repeatedly stated that this is the procedure the United States always uses to conduct its settlements and indicated that the burden of potentially reviewing two settlements is more appropriately placed on the court than on the Department of Justice. ECF No. 62; see also ECF No. 60. The Court disagrees. As set forth in the Court's original order, the Court finds that the Department of Justice is inappropriately seeking an advisory decision and that the Department of Justice, including the final decision maker, should agree to the settlement before seeking court approval. See ECF No. 58. The AUSA repeatedly refused to present this settlement to the Assistant Attorney General without a judicial order approving the settlement. In fact, the United States stated that if the Court is unwilling to address the reasonableness of the settlement before it is presented to the Assistant Attorney General, then the settlement "will be null and void." ECF No. 60-1 at 20. This standoff between

the Court and the Department of Justice only harms the Plaintiffs. While the Department of Justice is unwilling to compromise its rigid position in this case to ensure that justice is provided to the Plaintiffs, the Court places the Plaintiffs' needs above the unreasonable and improper demands of the Department of Justice. As a result, the Court takes the opposite position and will issue the advisory opinion that the Department of Justice demands. In reaching this decision, the Court relies on the AUSA's representations that the DOJ Torts Branch has been monitoring this case and that if the Court approves the tentative settlement, the Director of the Torts Branch will recommend that the Assistant Attorney General approve the settlement and that the Assistant Attorney General will give "great deference" to the Court's decision and the Director's recommendation.

## LEGAL STANDARD

It is well settled that courts have a special duty to safeguard the interests of litigants who are minors in civil litigation. Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011); see also Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)); see also Salmeron v. United States, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*."). To facilitate the Court in satisfying the duty to safeguard, Civil Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR. 17.1(a). This requires the Court to determine if the settlement is in the best interests of the minor and to consider not only the fairness of the amount of the settlement, but the structure and manner of distribution of the assets for the benefit of the minor.

The Ninth Circuit established that courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181–82. They should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel— whose interests the district court has no special duty to safeguard." Id. at 1182 (citing Dacanay, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." Robidoux, 638 F.3d at 1182.

The Ninth Circuit limited its decision in Robidoux to "cases involving the settlement of a minor's federal claims." Id. at 1181–82 (emphasis added). Where a settlement involves state law claims, federal courts are generally guided by state law rather than Robidoux. J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist., No. 116CV01492DADJLT, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). See also A.M.L. v. Cernaianu, No. LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases). The court in A.M.L. noted that, although federal courts generally require claims by minors to "be settled in accordance with applicable state law," the Ninth Circuit in Robidoux held such an approach "places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs." Id. at *2 (quoting Robidoux, 638 F.3d at 1181) (other citation omitted). But see Mitchell v. Riverstone Residential Grp., No. CIV. S-11-2202 LKK, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) ("[A] number of district courts have applied the rule provided in Robidoux to evaluate the propriety of a settlement of a minor's state law claims as well") (collecting cases).

The California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law. See Cal. Prob. Code §§ 3601 et seq. Under California law, the Court is tasked with evaluating the reasonableness of the settlement and determining whether the compromise is in the best interest of the minor. A.M.L., 2014 WL 12588992, at *3

(citations omitted). The Court is afforded "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." Goldberg v. Superior Court, 23 Cal. App. 4th 1378, 1382 (Cal. Ct. App. 1994); see also Pearson v. Superior Court, 136 Cal. Rptr. 3d 455, 459 (Cal. Ct. App. 2012) (explaining that the purpose of requiring court approval of a minor's settlement is to "allow[] the guardians of a minor to effectively negotiate a settlement while at the same time protect[ing] the minor's interest by requiring court approval before the settlement can have a binding effect on the minor").

## DISCUSSION

### A.     Proposed Settlement

The complete and precise terms of the proposed settlement are set forth in the Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claims ("Settlement Agreement"), the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust ("Reversionary Trust"), and the Legacy Enhancement Master Pooled Trust and Joinder Agreement ("Special Needs Trust"). See ECF Nos. 56-4, 56-6, and 56-8. The Court has reviewed and considered all of the submitted documents. The proposed settlement provides that Defendant will pay $3,500,000 to R.T.B., his parents, and his attorneys. ECF No. 56 at 5; see also ECF No. 56-4. Defendant will make an upfront cash payment of $1.4 million. Id. at 2. This money will be used as follows: $100,000 to R.T.B.'s parents, $875,000 in attorneys' fees to the two law firms representing Plaintiffs (25% of the $3.5 million settlement), $125,858.29 in advanced litigation fees, $62,016.13 to satisfy a medical lien, and $237,125.58 to fund a Special Needs Trust for R.T.B. ECF No. 56 at 6. The Special Needs Trust utilizes a "pooled trust fund to benefit individual with disabilities." ECF No. 56-8 at 1. R.T.B. will benefit significantly from participating in the pooled Special Needs Trust. As R.T.B.'s relatively small contribution will be combined with money from other individuals with disabilities to obtain a better return on his investment and more reasonable fees. ECF No. 56 at 8; see also 56-8 at 1. The pooled trust will create a sub-account for R.T.B. to protect his assets and the professional trustee will make distribution decisions based on R.T.B.'s specific situation. The Special Needs Trust will "provide

[R.T.B.] with items, benefits and services" so that [he] has the ability "to lead a comfortable and fulfilling life." ECF No. 56-8 at 1.

As part of the settlement, the United States also will provide and additional $1.2 million to fund the Reversionary Trust for the benefit of R.T.B. ECF No. 56 at 6; see also ECF No. 56-6. Initially, the Reversionary Trust will be funded with $900,000. See ECF No. 56; see also ECF No. 56-6. The United States will provide $1.2 million to purchase an annuity contract that will fund the Reversionary Trust. ECF No. 56-6. "The United States will purchase annuity contract(s), from an annuity company(ies) rated at least A by A.M. Best rating service, to pay the Reversionary Trust." ECF No. 56-4 at 5. The parties anticipate that the Reversionary Trust will provide $4,700 per month for R.T.B.'s care beginning ten years from the date of purchase of the annuity contract. ECF No. 56; see also ECF No. 56-4 at 5. The Reversionary Trust payments will be used to provide care for R.T.B. for the rest of his life, including medical care and devices, in-home attendant care, residential care, and other necessary expenses. ECF No. 56 at 5-6; see also ECF No. 56-6. The parties state that the "expected payout of the settlement over R.T.B.'s lifetime is projected to be $5,721,600.00." ECF No. 56 at 5.

Plaintiffs state that this case was particularly challenging because it "was two cases in one – the obstetrical case and the resuscitation case." ECF No. 56 at 11. Plaintiffs' attorney, Anne Brown, who was "a registered nurse practicing in the area of high-risk obstetrics" prior to becoming a lawyer, states that "this case involved complex questions of law and medicine as well as potential causation issues concerning the timing and etiology of the events leading to R.T.B.'s brain damage." Brown Decl. at 4. Ms. Brown explained that she reviewed extensive records, consulted with well-qualified experts in numerous medical specialties, and worked with the experts "as they prepared detailed reports that ultimately very likely significantly contributed to reaching a settlement of this case." Id. at 5-6. Ms. Brown noted that while she and co-counsel worked hard to develop and present a persuasive case for liability, there were significant medical and legal challenges that could have resulted in an unfavorable or less favorable result for Plaintiffs. Id. at 6.

Plaintiffs' counsel also provided the Court with case law supporting the proposed

settlement. Findley Decl. at 3-4; see also Brown Decl. at n1. In a case arising out of very similar circumstances, the court approved a settlement providing a net recovery of $4,800,000. <u>I.A. ex rel. Acuna v. United States</u>, No. 1:11-CV-00406-LJO, 2012 WL 6097066, at *3 (E.D. Cal. Dec. 7, 2012), report and recommendation adopted, No. 1:11-CV-0406-LJO, 2012 WL 6194194 (E.D. Cal. Dec. 12, 2012); see also <u>Waters V. United States</u>, No. CV 9:06-2438-PMD, 2008 WL 11349818, at *2 (D.S.C. Mar. 31, 2008) (settlement of $4,500,000 approved for minor plaintiff who was permanently and totally disabled and required substantial medical care for the remainder of his life due to the injuries alleged); <u>Garcia v. United States</u>, No. 2:16-cv-168, 2018 WL 889433, at *1, *3 (M.D. Fla. Jan. 26, 2018) (settlement of $4,250,000 approved for minor plaintiff that suffered from "numerous disabilities and medical problems, including, but not limited to, 'permanent injuries due [to] hypoxic ischemic encephalopathy'"), report and recommendation adopted, 2018 WL 838975 (M.D. Fla. Feb. 13, 2018). The Court has performed its own review of cases involving facts similar to those at issue here and finds the case law bears out Plaintiffs' counsel's assertion.

Based upon the information provided in the Petition, Settlement Agreement, Reversionary Trust, Special Needs Trust, and the supporting documents, and considering the totality of the facts and circumstances of this case, the Court finds that the Reversionary Trust and Special Needs Trust are fair, reasonable, and in the best interest of R.T.B. and will provide the continuity of care he requires. The Court further finds that the Trusts are consistent with the California Probate Code. <u>See</u> Cal. Prob. Code §§ 3602(c)(1) and 3600 et. seq. Finally, upon consideration of the facts of this case, Plaintiffs' claims, Defendant's defenses, the challenging medical and legal issues, and recoveries in similar cases, the Court finds that the proposed settlement of $3,500,000 is fair, reasonable, and in the best interest of R.T.B. and, therefore, **RECOMMENDS** the proposed settlement be **APPROVED**.

///
///
///
///

**B.     Attorney's Fees and Costs**

In addition to assessing whether the settlement is fair and reasonable, the Court must approve the attorneys' fees and costs to be paid for representation of a minor. See Cal. Prob. Code § 3601; Cal. Rule of Ct. 7.955.[1] In contingency fee cases, attorneys' fees for representing a minor historically have been limited to 25% of the gross recovery. See, e.g., DeRuyver v. Omni La Costa Resort & Spa, LLC, No. 3:17-cv-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020); Mitchell v. Riverstone Residential Grp., No. 2:11-cv-02202-LKK-CKD, 2013 WL 1680641, at *2 (E.D. Cal. Apr. 17, 2013); McCue v. South Fork Union Sch. Dist., No. 1:10-cv-0233-LJO-MJS, 2012 WL 2995666, at *2 (E.D. Cal. Jul. 23, 2012); Welch v. Cty. Of Sacramento, No. 2:07-cv-0794-GEB-EFB, 2008 WL 3285412, at *1 (E.D. Cal. Aug. 5, 2008); Red v. Merced Cty., No. 1:06-cv-1003-GSA, 2008 WL 1849796, at *2 (E.D. Cal. Apr. 23, 2008). "[M]ost courts require[] a showing of good cause to award more than 25% of any recovery" and such an award is "rare and justified only when counsel proves that he or she provided extraordinary services." Schwall v. Meadow Wood Apts., No. CIV. S-08-0014 LKK, 2008 WL 552432, at *1-*2 (E.D. Cal. Feb. 27, 2008) (internal quotation marks omitted). To determine whether a request for attorney's fee is reasonable, a court may consider factors such as the time and labor required, whether the minor's representative consented to the fee, the amount of money involved, the result obtained, and whether the fee is fixed, hourly, or contingent. See California Rule of Court 7.955(b).

Here, Plaintiffs' attorneys are seeking $875,000, which is 25% of the gross recovery and within the presumptively reasonable range. Ms. Brown justifies the request for attorneys' fees by explaining that "[t]his case involved collecting, reviewing and analyzing over 17,000 pages of medical records, relevant policies and procedures, as well as depositions of the plaintiffs and 12 key defense witnesses located around the world, all done during the COVID pandemic."

---

[1] Similarly, San Diego Superior Court Civil Rule 2.4.6.2 states that, regarding a minor's compromise, "the court will determine the amount of costs, expenses, and attorney's fees to be allowed from the proceeds of the settlement. Absent extraordinary circumstances, attorney's fees will not exceed 25% of the gross proceeds of the settlement."

Brown Decl. at 6. Mr. Findley states that his "firm devoted hundreds of hours of time to ensuring the success of this case. Recovery was not certain, and should the case not have been successful, this time and effort spent would have been unrecoverable by [his] law firm." Findley Decl. at 4. The attorneys provided significant and specialized expertise as Ms. Brown previously was a registered nurse practicing in the area of high-risk obstetrics and her legal practice focuses on military families whose children suffer catastrophic injuries during birth [Brown Decl. at 3] and Mr. Findley and his firm have extensive experience in litigating cases involving minors injured during birth [Findley Decl. at 2-3]. The Court finds that given the facts of this litigation, including the experience of counsel and the time expended, the requested attorneys' fees are fair and reasonable.

Plaintiffs' counsel also seek $125,858.29 in advanced litigation costs. The attorneys state that "[e]xpert fees represent 90% of the costs advanced." ECF No. 56 at 11. The attorneys explain that they incurred the costs because "it was necessary to contact and consult with well-qualified experts in: pediatric anesthesiology, anesthesiology, neuroradiology, obstetrics, neonatology, pediatric radiology, pediatric ENT, pathology[,] as well as an economist and life care planner." Brown Decl. at 5-6; see also ECF No. 56-13 ("Litigation Costs Invoice"). Counsel also had to pay more than $25,000 to cover fees associated with defense witness depositions. ECF No. 56-13. After reviewing the Litigation Cost Invoice, and understanding the facts and issues in this case, the Court finds that the requested costs are reasonable and fair.

## CONCLUSION

After conducting an independent inquiry and evaluation of the proposed settlement, the Court finds that the proposed settlement is fair, reasonable, and in the best interest of the R.T.B., given his injuries, the legal and factual issues involved in this case, and recoveries in similar cases. See Robidoux, 638 F.3d at 1181-82. The Court also finds that the proposed attorneys' fees ($875,000.00) and litigation costs ($125,858.29) are fair and reasonable. Accordingly, the Court **RECOMMENDS** that Judge Whelan issue an Order: (1) adopting this Report and Recommendation; and (2) **GRANTING** Plaintiffs' Ex Parte Petition for Approval of Minor's Compromise and for Approval of Minor's Trusts. ECF No. 56. This Court further

**RECOMMENDS** that Judge Whelan:

1. Approve the settlement and all terms of the settlement contained in the Settlement Agreement.

2. Approve the terms of the Reversionary Trust and Supplemental Needs Trust.

3. Require Plaintiffs to satisfy all liens prior to the establishment of the trust.

4. Find that no bond is required as both the Reversionary Trust and Special Needs Trust are managed by professional Trustees.

5. Find that no annual accountings to the Court are required as both the Reversionary Trust and Special Needs Trust are managed by professional Trustees.

6. Find that Maya Breault and Richard Dylan Breault, as parents and next friends of R.T.B., a minor, are authorized to sign the Stipulation, the Reversionary Trust, the Special Needs Trust, and any other documents that are necessary to consummate the Settlement, and to provide any information and documentation necessary to complete the purchase of annuity contracts and the establishment of the Reversionary Trust and the Special Needs Trust.

Any party to this action may file written objections with the Court and serve a copy on all parties no later than **January 5, 2022**. The document should be captioned "Objections to Report and Recommendation." If objections are filed, any reply is due by **January 12, 2022**.

Although the federal statutory scheme provides for a 14-day objections period to a Magistrate Judge's Report and Recommendation, the undersigned notes that the Petition in this case is unopposed. See ECF No. 56-4. Therefore, if all parties wish to waive the objections period, they should file a joint stipulation to that effect immediately, to allow the Court to adopt this Report and Recommendation without further delay. There will be no adverse consequences to any party who files objections or otherwise chooses not to waive the objection period.

**IT IS SO ORDERED**.

Dated: 12/22/2021

Hon. Barbara L. Major
United States Magistrate Judge